542 A.2d 546

**COMMONWEALTH of Pennsylvania**

v.

**Romain KNAPP, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 5, 1987.

Filed May 2, 1988.

164

Raymond E. Ginn, Jr., Wellsboro, for appellant.

James E. Carlson, District Attorney, Wellsboro, for Com., appellee.

Before BROSKY, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

■ This appeal is from the judgment of sentence for involuntary deviate sexual intercourse, statutory rape, corruption of the morals of a minor, and conspiracy. Appellant contends that the trial court erred in (1) precluding a defense witness from testifying by ruling that, if the witness testified, she would be subject to cross-examination concerning "other crimes" committed by appellant; (2) denying appellant's *pro se* motion to remove defense counsel; and (3) denying appellant's motion for the trial judge to recuse himself. In addition, appellant contends that trial counsel was ineffective for failing to (1) object to the testimony of the child victim, who appellant alleges was incompetent to testify; (2) comply with the court's order directing counsel to present evidence in support of appellant's motion to change venue; (3) object to the Commonwealth's introduction of a prior consonant statement made

by the victim; (4) object to the testimony of a witness who testified in violation of a sequestration order; and (5) object to references made by the victim regarding appellant's prior criminal activity.[1] For the reasons that follow, we vacate the judgment of sentence and remand the case to the trial court for an evidentiary hearing on appellant's final ineffectiveness claim.

On May 8, 1986, appellant was arrested and charged with the above-stated offenses. The charges arose from appellant's alleged sexual abuse of his girlfriend's twelve-year-old son. On December 9, 1986, following a jury trial, appellant was found guilty of all charges. Post-trial motions were filed and denied. On April 29, 1987, appellant was sentenced to an eight-to-sixteen-year term of imprisonment on the involuntary deviate sexual intercourse charge,[2] to run consecutively to a sentence appellant was serving for a prior conviction. On the same day, trial counsel was granted leave to withdraw, and present counsel was appointed. This appeal followed.

## I. TRIAL ERRORS

■ Appellant first contends that the trial court erred in precluding a defense witness from testifying by ruling that, if the witness testified, the Commonwealth could cross-examine her with regard to "other crimes" allegedly committed by appellant. At trial, appellant called his wife, Helen Knapp, to the stand. The Commonwealth then requested an offer of proof. During the side-bar discussion on the offer, the court noted that, if Helen Knapp were called to

1. Appellant raises several other ineffective assistance of counsel claims in a *pro se* brief that was filed with counsel's brief. Because appellant is represented by counsel, we will not address the *pro se* arguments. *See Commonwealth v. Henry,* 341 Pa.Super. 146, 150 n. 2, 491 A.2d 193, 195 n. 2 (1985); *Commonwealth v. Moore,* 321 Pa.Super. 1, 9–10 n. 4, 467 A.2d 862, 866–67 n. 4 (1983).

2. On the remaining charges, appellant was sentenced to terms of imprisonment of two-and-one-half-to-five-years for statutory rape, one-to-two-years for corruption of the morals of a minor, and two-and-one-half-to-five-years for conspiracy. These terms were to be served concurrently to the sentence imposed for involuntary deviate sexual intercourse.

the stand, she might be subject to cross examination with regard to her awareness of attempts made by appellant to convince the victim to commit perjury. N.T. December 9, 1986 at 48. Appellant maintains that "[a]s a result of the trial court's indication in this regard, the defense decided not to call Mrs. Knapp to the stand." Appellant further notes that he has never been *convicted* of subornation of perjury, and thus the court's ruling that it would allow cross-examination on this issue was erroneous.

Essential to appellant's argument is an assumption that evidence of his attempt to have the victim perjure himself is relevant and may be offered *only* if that conduct resulted in a conviction. We disagree with this proposition. In *Commonwealth v. White*, 447 Pa. 331, 290 A.2d 246 (1972), our Supreme Court noted that

> It is undoubtedly true that evidence of a party's attempt to embrace a juror is admissible to show his unwillingness to rely on the soundness of his cause. *Subornation of a witness and proof of flight as an admission of guilt are analogues. Power v. Grogan*, 232 Pa. 387, 399, 81 A. 416 (1911); *McHugh v. McHugh*, 186 Pa. 197, 203, 40 A. 410 (1898); *Commonwealth v. Brown*, 23 Pa. Super. 470, 502 (1903).

*Id.*, 447 Pa. at 339, 290 A.2d at 250 (emphasis supplied). *See also Commonwealth v. Brooks*, 352 Pa.Super. 394, 405, 508 A.2d 316, 322 (1986) (court did not err in admitting into evidence letter written by defendant where letter was relevant because it "relate[d] to an issue in the truth determining process; i.e., the guilt or innocence of appellant. The letter bears directly on this question and suggests that the writer was attempting to hide his involvement in the crime by compelling a witness to change her testimony."). Because evidence relating to appellant's attempt to have the victim commit perjury was admissible, we conclude that the trial court did not err in ruling that appellant's wife might be subject to cross-examination in this regard if she took

the stand in appellant's behalf.[3]

Appellant next contends that the trial court erred in denying his pre-trial motion to remove defense counsel. The decision whether to appoint new counsel rests in the discretion of the trial court. *See Commonwealth v. Tyler,* 468 Pa. 193, 198, 360 A.2d 617, 619 (1976); *Commonwealth v. Bell,* 328 Pa.Super. 35, 47, 476 A.2d 439, 446 (1984). Although an indigent defendant is entitled to free counsel, he or she is not entitled to free counsel of his or her choice, *Commonwealth v. Tyler, supra* 468 Pa. at 197, 360 A.2d at 619, and appointed counsel may be rejected only "for good cause shown." *Id.* (quoting *Commonwealth v. Johnson,* 428 Pa. 210, 213, 236 A.2d 805, 807 (1968)); *Commonwealth v. Bell, supra.* A "mere dissatisfaction" with appointed counsel is inadequate to establish "good cause shown." *Commonwealth v. Bell, supra.* If the defendant can show that irreconcilable differences exist between counsel and client, however, a trial court's refusal to appoint new counsel is an abuse of discretion and the defendant is entitled to a new trial. *Commonwealth v. Tyler, supra* 468 Pa. at 197–98, 360 A.2d at 619; *Commonwealth v. Bell, supra.*

Here, appellant does not allege that irreconcilable differences existed between himself and counsel. Instead, appellant alleges only that "[he] and his counsel had a relationship which was 'strained.'" Brief for Appellant at 16. We cannot conclude that such a bald allegation is tantamount to "good cause shown." *Cf. Commonwealth v. Johnson,* 309 Pa.Super. 117, 126, 128–29, 454 A.2d 1111, 1115, 1116–17

3. We note that, even if the court erred in determining that this evidence was admissible, appellant has made no showing that he was prejudiced by his wife's failure to testify. Indeed, a review of the side-bar discussion on the offer of proof reveals that trial counsel recognized that Mrs. Knapp's testimony was not helpful:

BY MISS WALRATH [appellant's counsel]: I have been ordered by my client to get her [Mrs. Knapp] on the stand. My client is indicating he wants her on the stand.

BY THE COURT: All right, if he insists, all right. It's against your advice? Is that correct?

BY MISS WALRATH: Right. My advice is not to call her. That she has nothing to offer.

N.T. December 9, 1986 at 48.

(1983) (court did not abuse discretion in denying request for new counsel where defendant asserted only that he lacked confidence in counsel). Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion to remove trial counsel.

■ Appellant next contends that the trial court erred in denying his motion for the trial judge to recuse himself.

The party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal. *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976). Furthermore, the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion." *Commonwealth v. Kane*, 199 Pa.Super.Ct. 89, 91, 184 A.2d 405, 406 (1962).

In general, a "trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case *or whenever he believes his impartiality can be reasonably questioned.*" *Commonwealth v. Goodman*, 454 Pa. 358, 361, 311 A.2d 652, 654 (1973) (quoting from A.B.A. Standards Relating to the Function of the Trial Judge § 1.7)....

*Commonwealth v. Darush*, 501 Pa. 15, 21, 459 A.2d 727, 731 (1983). *See also Municipal Pub. Inc. v. Snyder*, 322 Pa.Super. 464, 481, 469 A.2d 1084, 1092 (1983).

Here, appellant produced no evidence that would tend to establish bias, prejudice, or unfairness necessitating recusal. As the trial court noted in its Opinion in response to appellant's motion,

A hearing was held August 19, 1986 on the omnibus pre-trial motions filed by counsel and by the defendant pro se.

The defendant filed a motion to recuse the Judge.... At the hearing, the defendant gave as reasons for recusal that the Judge had made statements regarding the defendant. *The defendant could not be specific about the statements.* It appears that the defendant recalls the

Court, when it was District Attorney, made a statement that he ran from me. The defendant was charged with a motor vehicle offense for leaving the scene of an accident in 1977. The Court may have made the statement in arguing the matter to the jury.

The petition states that the Court made degrading statements regarding the defendant. The only statement the Court recalls regarding the defendant are [sic] a matter of record in sentencing at Number 266 Criminal Action, 1980 and Number 265 Criminal Action, 1980.

Trial Court Opinion, August 19, 1986 at 1 (emphasis supplied). On appeal, appellant again fails to specify his reasons for recusal. Appellant merely reiterates that "the trial court, both as District Attorney and presiding Judge has had previous contact with [appellant]." Brief for Appellant at 17. This type of argument was specifically rejected by our Supreme Court in *Commonwealth v. Darush, supra:*

[W]e have never held and are unwilling to adopt a *per se* rule that a judge who had participated in the prosecution of a defendant may never preside as judge in future unrelated cases involving that defendant. Absent some showing of prejudgment or bias we will not assume a trial court would not be able to provide a defendant a fair trial based solely on prosecutorial participation.

501 Pa. at 22, 459 A.2d at 731. Because we cannot assume bias or prejudice based upon the court's prior contacts with appellant, and because appellant has failed to demonstrate in what respect the court was *actually* biased or prejudiced against him, we conclude that the trial court did not err in refusing appellant's recusal motion.

## II. INEFFECTIVENESS

■ Appellant next raises five claims of ineffective assistance of trial counsel. The determination whether counsel rendered ineffective assistance is arrived at through a two-prong test. First, we must ascertain whether the issue underlying the claim of ineffectiveness has arguable merit. *See Commonwealth v. Buehl,* 510 Pa. 363, 378, 508 A.2d

1167, 1174 (1986). This requirement is based upon the principle that we will not find counsel ineffective for failing to pursue a frivolous claim or strategy. *See Commonwealth v. Parker,* 503 Pa. 336, 341, 469 A.2d 582, 584 (1983). Second, if appellant's claim does have arguable merit, we must determine whether the "course chosen by counsel had some reasonable basis designed to serve the best interests of the client." *Commonwealth v. Buehl, supra* (citing *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 605, 235 A.2d 349, 353 (1967)). If our review of the record reveals that counsel was ineffective, we then must determine whether appellant has demonstrated that counsel's ineffectiveness worked to his or her prejudice. *See Commonwealth v. Pierce,* 515 Pa. 153, 157–59, 527 A.2d 973, 975 (1987). To determine whether appellant was prejudiced, our Supreme Court adopted the test announced by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Commonwealth v. Pierce, supra* 515 Pa. at 159–63, 527 A.2d at 976–77. Under *Strickland,* to prove that counsel's ineffectiveness resulted in prejudice, an appellant must show the the error was "so serious as to deprive [him or her] of a fair trial, a trial whose result was reliable." *Strickland v. Washington, supra* 466 U.S. at 687, 104 S.Ct. at 2064.

In this analysis, counsel is presumed to be effective, *Commonwealth v. Norris,* 305 Pa.Super. 206, 210, 451 A.2d 494, 496 (1982), and appellant bears the burden of establishing that trial counsel was ineffective. *Commonwealth v. Jones,* 298 Pa.Super. 199, 205, 444 A.2d 729, 732 (1982). Moreover, in *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981) our Supreme Court noted that,

> Assertions of ineffectiveness in a vacuum cannot be ineffectiveness. Counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffec-

tive. This Court will no longer consider claims of ineffective assistance of counsel in the abstract.

*Id.,* 492 Pa. at 563, 424 A.2d at 1335.

■ Appellant first contends that the child victim was incompetent to testify, and that trial counsel was ineffective for failing to object to the testimony of this witness. The competency of a witness is a matter for the trial court to determine, and the court's determination will not be overturned absent an abuse of discretion. *Commonwealth v. Goldblum,* 498 Pa. 455, 464, 447 A.2d 234, 239 (1982); *Commonwealth v. Gaerttner,* 335 Pa.Super. 203, 214, 484 A.2d 92, 98 (1984).

In order to be testimonially competent, a witness must have the ability to (1) perceive the event with a substantial degree of accuracy, (2) remember it and (3) communicate about it intelligibly (4) mindful of his duty to tell the truth under oath.

*Commonwealth v. Goldblum, supra. See also Commonwealth v. Hall,* 267 Pa.Super. 204, 209, 406 A.2d 765, 768 (1979).

Appellant focuses his attack here on the fourth criterion listed above, "which we have also described as 'the moral responsibility to be truthful.'" *Commonwealth v. Hall, supra,* 267 Pa.Superior Ct. at 209–10, 406 A.2d at 768 (quoting *Commonwealth v. Mangello,* 250 Pa.Super. 202, 203, 378 A.2d 897, 898 (1977)). Appellant maintains that the victim was incompetent to testify because he "could not understand the meaning of the oath nor the distinction between a truth and a lie." We disagree. In *Commonwealth v. Payton,* 258 Pa.Super. 140, 392 A.2d 723 (1978), we noted that,

There is more to a child's consciousness of the duty to speak the truth than being able to give a clear example of a lie or to understand the concept of an "oath." In fact, the trial judge's opportunity to observe the demeanor, alertness, thoughtfulness, and sincerity of a child witness may be more informative than the answers the child gives

to questions such as "What is a lie?" and "What will happen to you if you tell a lie?"

*Id.,* 258 Pa.Superior Ct. at 143, 392 A.2d at 725 (citation omitted). *See also Commonwealth v. Short,* 278 Pa.Super. 581, 588, 420 A.2d 694, 697 (1980).

Here, the child witness, in response to questioning by the prosecutor regarding his responsibility to tell the truth, testified as follows:

Q. All right. Now, Jonathan, just a minute ago, or a moment ago, you were over in front of Mr. Clark and you raised your right hand and you swore to tell the truth. You took an oath. Do you understand what that oath means?

A. No.

Q. You don't?

A. No.

Q. What do you think it means? Do you remember what Mr. Clark said to you? Do you recall what he said to you, Jonathan? Do you recall swearing to tell the truth?

A. Yes.

Q. Okay. What is the truth to you? Can you tell me what the truth is to you? Can you tell me that?

A. (Shakes head no)

Q. You can't? Can you tell me the difference between the truth and a lie? Do you know the difference?

A. (Shakes head no)

Q. You don't know the difference? What if you told your mother a lie? What would that be? Could you tell me that?

A. (Shakes head no)

Q. You can't tell me that? Let me ask you this. If I told you that it was snowing like crazy outside, would that be a truth or would that be a lie?

A. Truth.

Q. Right now?

A. Oh, no.

Q. If I told you it was 80 degrees out, would that be the truth, or would that be a lie?

A. A lie.

Q. If I told you that my tie was yellow, would that be the truth or would that be a lie?

A. That's a lie.

Q. If I told you that the Judge wore glasses, would that be the truth or would that be a lie?

A. Truth.

Q. Now, a minute ago you just swore, you placed your hand on the Bible and swore to tell the truth. Do you understand that?

A. Yeh.

Q. Do you understand that that means you aren't going to lie?

A. Yeh.

Q. What would happen to you if you lied?

A. You get punished for it.

Q. You get punished for it. Do you know how you would get punished if you lied?
Did your mother ever punish you if you lied?

A. Yeh, sometimes.

Q. What would she do to you if she caught you l[y]ing?

A. She put soap in my mouth and stuff like that.

Q. Put soap in your mouth and stuff like that. Did she ever spank your bottom?

A. Yeh.

Q. Do you understand that we are here today for you to tell the truth? Do you understand that?

A. Yeh.

Q. Do you understand that if you don't tell the truth, you could be in very serious trouble?

A. Yeh.

Q. Do you promise to tell the truth?

A. Yeh.

Q. Do you, the Bible that you just put your hand on, do you know why you put your hand on the Bible?

A. No.

Q. Do you understand that God will also punish you if you lie?

A. Yeh.

Q. Did anybody ever teach you that when you were growing up?

A. We went to Sunday School and Church.

Q. Did you? Okay. So you know something about God then?

A. Yeh.

Q. Do you understand that if you lied, you would be punished by not only man but by God also?

A. Yeh.

N.T. December 9, 1986 at 9–11. This testimony reveals that, although the victim was unable to *define* the word "truth", or to articulate the distinction between a "truth" and a "lie" as a philosophical matter, he nevertheless was able to recognize and appreciate the distinction when given examples by the prosecutor. Moreover, the victim indicated that he knew that, if he did not tell the truth, there was a possibility that he would be punished. On this record, we conclude that the child witness exhibited a sufficient awareness of his moral responsibility to testify truthfully. *See Commonwealth v. Gaerttner, supra; Commonwealth v. Bailey,* 322 Pa.Super. 249, 469 A.2d 604 (1983); *Commonwealth v. Short, supra.*[4] Because the witness was compe-

---

**4.** Appellant nevertheless maintains that he is entitled to relief under the standard announced in *Commonwealth v. Rimmel,* 221 Pa.Super. 84, 289 A.2d 116 (1972). In *Rimmel,* we granted a new trial based on our finding that a colloquy conducted of two young girls, aged seven and eight, was inadequate to establish competency. During that colloquy, the witnesses, in response to questions regarding the duty of truthfulness, responded only that they knew they would be "hollered at" or "beaten" if they did not tell the truth. *Id.,* 221 Pa.Superior Ct. at 86–87 & nn. 1 & 2, 289 A.2d at 117–18 & nn. 1 & 2. Moreover, we note that *Rimmel* has since been criticized and confined to its facts. *See*

tent to testify, appellant's claim that trial counsel was ineffective for failing to object to the testimony lacks arguable merit, and appellant is not entitled to relief on this ground.

■ Appellant next contends that trial counsel was ineffective for failing to present evidence in support of appellant's *pro se* motion to change venue. This contention is meritless. Prior to trial, appellant filed a series of *pro se* motions, including a motion to change venue. In disposing of appellant's venue motion, the trial court noted that,

> The defendant provided the Court with no testimony which would cause the Court to enter [grant?] such a motion. The Court shall direct counsel to submit to the Court an affidavit from the newspaper and the radio station as to any news releases. The Court is unaware of any publicity in this matter. Although the defendant believes he is notorious, it is the opinion of the Court that very few citizens of Tioga County would recognize the defendant's name or know anything about his activities.

Trial Court Opinion, August 19, 1986 at 2. The court then issued an order stating that "The motion for change of venue or venire is hereby denied. The defense counsel is directed to present what evidence it may have as to pre-trial publicity."

On appeal, appellant submits that trial counsel failed to comply with the court's order and, therefore, was ineffective. Appellant, however, neither indicates the type or extent of the pre-trial publicity that allegedly existed, nor does he argue in what respect the publicity was prejudicial. Indeed, appellant has not offered to prove *any* facts that

*Commonwealth v. Mangello,* 250 Pa.Super. 202, 378 A.2d 897 (1977). *See also Commonwealth v. Bailey, supra; Commonwealth v. Short, supra; Commonwealth v. Hall, supra. Rimmel,* however, is distinguishable on its facts from the case at bar. As we noted in *Short,* in *Rimmel* "[t]here was no further attempt to elicit the girls' conception of moral responsibility or divine retribution nor of their comprehension of the difference between truth and falsehood." 278 Pa.Super. at 589, 420 A.2d at 698. Here, as we have noted in the text above, the child witness *did* indicate his ability to distinguish between truth and falsehood, and did indicate his awareness of the possibility of divine moral retribution should he tell a lie.

would support a claim that pre-trial publicity either existed or was prejudicial. As we have noted above, counsel cannot be found ineffective in a vacuum, *see Commonwealth v. Pettus, supra,* and boilerplate allegations such as these are insufficient to warrant a remand for a hearing on the claim. *Id.* Accordingly, we must conclude that appellant's claim that counsel was ineffective for failing to pursue the venue claim does not possess arguable merit.[5]

Appellant next contends that trial counsel was ineffective for failing to object to the Commonwealth's introduction of prior consonant statements made by the victim. At trial, the Commonwealth called two Children's Services caseworkers to the stand to corroborate the victim's testimony. Each caseworker testified with regard to statements that the victim had made during the course of the agency's investigation; the statements related to sexual acts allegedly performed upon the victim by appellant. The statements that these caseworkers attributed to the victim were consistent with the victim's trial testimony. Each caseworker also testified that the victim's version of events remained consistent throughout the investigation. Appellant maintains that the testimony of these caseworkers, relating prior consonant statements made by the victim, was clearly inadmissible, and that trial counsel was ineffective for failing to object to the testimony. We disagree.

Ordinarily a witness' prior statement is not admissible to corroborate or substantiate present testimony. *However, as an exception to the hearsay rule it is admissible as a prior consonant statement if it is alleged the present testimony is recently fabricated or that the witness is testifying from corrupt motives. Commonwealth v. Ravenell,* 448 Pa. 162, 169, 292 A.2d 365 (1972). It is admissible not as to the truth of the stated facts, but solely to bolster credibility. *Commonwealth v. Martin,* 124 Pa.Super. 293, 188 A. 407 (1936)....

5. We note that in his brief on appeal, appellant realizes the weakness of this claim, as he states that "quite frankly, we would submit that the record is somewhat deficient to justify a change of venue or venire under the [appropriate] test." Brief for Appellant at 16.

*Commonwealth v. Billig,* 264 Pa.Super. 199, 203, 399 A.2d 735, 737 (1979) (emphasis supplied). *See also Commonwealth v. Cruz,* 489 Pa. 559, 566, 414 A.2d 1032, 1036 (1980).

Here, the victim was the first witness to testify at trial. On cross-examination, the following exchange occurred between the victim and appellant's trial counsel:

Q. Jonathan, this isn't the first time you have testified in this court room is it?

A. No. It was one time before.

Q. And you have testified before that this did not happen, didn't you?

A. Yeh. Because they threatened me about killing my Dad.

Q. You were under oath at that time also, weren't you? You took an oath and swore to tell the truth?

A. Yeh.

Q. And your testimony is now that you lied at that time, is that right?

A. Yeh.

Q. You had told a number of different people that Romain [appellant] never abused you and never touched you, didn't you?

A. Yeh.

Q. You wrote letters telling people that that didn't happen, didn't you?

A. Yeh. Because Mom made me.

Q. How many times did you talk to Jill Maier [one of the Children's Services Caseworkers] before the time you told her that Romain had actually touched you, and done these things to you?

A. A couple, because Mom was standing there.

Q. She also talked to you at school before, hadn't she? Just you and Jill?

A. Once.

Q. And you told her then that nothing was happening? Didn't you? Nothing happened?

A. Yeh.

Q. Your testimony today, you have talked to a number of people about what you were going to say, didn't you? Did anyone tell you what to say today?

A. No.

Q. Did you talk to Mr. Carlson [the prosecutor] before today about what you were going to testify about?

A. Yeh.

Q. Did you talk to Jill Maier about it?

A. Jill Maier ain't here right now.

Q. She is not here right now?

A. No.

Q. Who else did you talk to about what you were going to say in court today?

A. Just Carl.

Q. Mr. Carlson?

A. Yeh.

Q. The District Attorney? The man over here?

A. Yes.

Q. After you told Jill these things that you have just testified to, do you recall talking to your Mom and telling your Mom it was all a lie?

A. No.

Q. Do you remember telling other people that it was a lie, that you were just doing what Jill told you to say?

A. Jill didn't tell me anything to say.

N.T. December 9, 1986 at 24–25. After this cross-examination, the Commonwealth called the two Children's Services caseworkers.

■ The obvious thrust of the cross examination excerpted above was to suggest that the victim had recently fabricated his trial testimony. By advancing a recent fabrication claim, trial counsel opened the door for the Commonwealth to bolster the victim's credibility through the introduction of testimony—like that of the two Children's Servic-

es caseworkers—that would tend to rebut the inference of recent fabrication, and thereby bolster the victim's credibility. *See Commonwealth v. Cruz, supra; Commonwealth v. Billig, supra.*[6] Because the prior consonant statements at issue here were admissible, appellant's claim that trial counsel was ineffective for failing to object to their introduction does not possess arguable merit.[7]

Appellant next contends that trial counsel was ineffective for failing to object to the testimony of a witness who testified in violation of a sequestration order. "The decision of whether or not to sequester a witness is within the province of the trial judge and, absent a clear abuse of discretion, will not be reversed." *Commonwealth v. Albrecht,* 510 Pa. 603, 619, 511 A.2d 764, 772 (1986). " 'The purpose of sequestration of witnesses is to reduce the possibility that a witness may, from what he hears in the courtroom, improperly mold his testimony to fit some plan not riveted to the standards of truth.' " *Commonwealth v.*

6. We note that appellant does not claim that trial counsel was ineffective for questioning the victim with regard to his prior statements, and thus raising the recent fabrication theory that allowed for the introduction of the victim's prior consonant statements.

7. In a related argument, appellant contends that trial counsel was ineffective for failing to object to the Commonwealth's repeatedly asking the victim whether he was telling the truth. Appellant maintains that this questioning, which occurred on direct examination, was designed to "rehabilitate and reinforce" the victim's testimony, even though the victim had not yet been cross examined. Appellant has cited no authority in support of his assertion that this line of questioning was inappropriate. Moreover, we note that when, as here, a witness is under fourteen years of age, the court must make a finding with regard to that witness's competency to testify. *Commonwealth v. Gaerttner,* 335 Pa.Super. 203, 214, 484 A.2d 92, 98 (1984). As we have noted in the text above, the trial court, in determining whether a witness is competent, must find that he or she is aware of the duty to tell the truth. *See, e.g., Commonwealth v. Goldblum, supra.* At trial, appellant attempted to establish that the victim was unaware of his duty to tell the truth and was unable to distinguish between a truth and a falsehood. The disputed questions were directed precisely at this central issue, and were, at worst, merely cumulative to questions already asked, in the presence of the jury, regarding the witness's competency to testify. Because appellant has failed to show in what respect these questions were either objectionable or harmful, we conclude that his ineffective assistance of counsel claim does not possess arguable merit.

*Fawcett,* 297 Pa.Super. 379, 382, 443 A.2d 1172, 1173–74 (1982) (quoting *Commonwealth v. Smith,* 424 Pa. 9, 14, 225 A.2d 691, 694 (1967)).

Here, at the beginning of trial, the court granted, over appellant's objection, a Commonwealth motion to sequester all witnesses. N.T. December 9, 1986 at 8. Notwithstanding this sequestration order, the Commonwealth called as a rebuttal witness the victim's grandmother, Eugenia Farnham, who had been present in court during the testimony of prior witnesses. *Id.* at 52. Appellant's trial counsel did not object to Mrs. Farnham's testimony.

Although it appears that Mrs. Farnham testified in violation of the sequestration order, appellant does not allege in what respect Mrs. Farnham's presence in the courtroom improperly influenced her testimony. Indeed, appellant does not identify *any* prejudice that resulted from the violation of the sequestration order. Moreover, we note that the sequestration order was granted not for appellant's benefit, but at the Commonwealth's request, and to ensure that *appellant's* witnesses did not "improperly mold" their testimony in an untruthfull manner. The reason for the sequestration order was explained as follows:

BY [THE PROSECUTOR]: The Commonwealth at this time would move to sequester all witnesses.

BY THE COURT: All right.

BY [APPELLANT'S COUNSEL]: I don't think it's necessary in this case. Particularly since all of these people have testified at numerous other trials here, and each knows what each other will testify to.

BY [THE PROSECUTOR]: The Commonwealth's witnesses have been. But not the defense witnesses.

BY THE COURT: He is requesting it because of this.

*Id.* at 8. Because appellant has failed to allege facts that would tend to show that the violation of the sequestration order was prejudicial to him, we must conclude that an objection to Mrs. Farnham's testimony would have been baseless. *See, e.g., Commonwealth v. Albrecht, supra* 510 Pa. at 620, 511 A.2d at 773 (defendant not entitled to relief

absent showing of specific damage occurring as result of violation of sequestration order); *Commonwealth v. Fawcett, supra* 297 Pa.Super. at 383, 443 A.2d at 1174 (in absence of prejudice to defendant, no abuse of discretion will be found in trial court's ruling on sequestration issue). Accordingly, appellant's contention that trial counsel was ineffective for failing to raise such an objection does not possess arguable merit.

■ Appellant finally contends that trial counsel was ineffective for failing to object to the Commonwealth's introduction of evidence concerning prior crimes committed by appellant. It is well-established in this Commonwealth that reference to prior criminal activity of the accused, either expressly or by reasonable implication, is impermissible.[8] *Commonwealth v. Percell*, 499 Pa. 589, 592, 454 A.2d 542, 544 (1982); *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972); *Commonwealth v. Green*, 351 Pa.Super. 170, 176, 505 A.2d 321, 325 (1986).

> The purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually strip him of the presumption of innocence.

*Commonwealth v. Allen, supra* 448 Pa. at 182, 292 A.2d at 375 (quoting *Commonwealth v. Trowery*, 211 Pa.Super.

---

**8.** Exceptions to this rule exist when evidence of other crimes tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan, or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; (5) the identity of the person charged with the commission of the crime on trial; or (6) that the evidence is part of the same transaction as the case on trial. *Commonwealth v. Green*, 351 Pa.Super. 170, 176, 505 A.2d 321, 324 (1986).

We note that the Commonwealth has not filed a brief in this matter. Accordingly, there is no suggestion that any of the above exceptions apply to the instant case. Moreover, it does not appear from the record that any of the exceptions apply.

171, 173–74, 235 A.2d 171, 172 (1967)). *See also Commonwealth v. Carroll,* 275 Pa.Super. 241, 244, 418 A.2d 702, 704 (1980); *Commonwealth v. Durant,* 268 Pa.Super. 191, 194, 407 A.2d 1311, 1312 (1979). When such a reference is made, the operative question becomes whether the jury could reasonably infer from the facts presented that the accused engaged in prior criminal activity. *Commonwealth v. Groce,* 452 Pa. 15, 19–20, 303 A.2d 917, 919 (1973) *cert. denied* 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973). If the jury can reasonably make such an inference, then prejudicial error has been committed and a new trial is warranted. *Id.,* 452 Pa. at 20, 303 A.2d at 920. *See also Commonwealth v. Allen, supra.*

 Here, at trial, the victim testified on direct examination as follows:

Q. Johnathan, do you like Romain [appellant]?

A. Not now.

Q. Did you like him at one time?

A. Yeh. When he did good stuff.

Q. Why don't you like him now?

A. Because he did it to me and stuff like that. And then he told me he did it to other kids. Because other guys did it to him when he was little.

Q. What's this now?

A. Other guys did it to him when he was little. And he said he run out of sperm so he does it to kids. He did it with other kids too.

Q. Who told you that?

A. Romain.

Q. When did he tell you that?

A. One day down in the cellar.

N.T. December 9, 1986 at 22–23. Appellant's trial counsel failed to object to this line of questioning.

The testimony of the victim clearly makes reference to prior criminal activity by appellant. More specifically, statements that appellant "did it to other kids" give rise to

an inference that appellant engaged in other sexual assaults on children. Accordingly, we conclude that appellant's claim that trial counsel was ineffective for failing to object to this questioning is meritorious.[9]

Moreover, a review of the record convinces us that counsel's failure to object worked to appellant's prejudice, and was serious enough to raise a question about the reliability of the verdict. The victim was the primary Commonwealth witness, and the *only* eyewitness to the sexual assaults in question. In light of this, evidence that the accused participated in similar activity in the past is particularly prejudicial, as it could provide the jury with an independent reason to credit the victim's otherwise uncorroborated account of the assaults. Thus, there existed a danger that the jury concluded that appellant was likely to have committed the instant assault simply because he had committed similar offenses in the past. Such a danger improperly strips the accused of the presumption of innocence, *see Commonwealth v. Allen, supra*, and permits the accused to be convicted not on the basis of evidence related to the charge at issue, but on evidence of past conduct. We therefore conclude that appellant was prejudiced by his counsel's failure to object to the testimony.

Our inquiry does not end here, however, because there has been no evidentiary hearing on appellant's ineffective assistance of counsel claims. Accordingly, trial counsel has not had an opportunity to explain whether her decision not to object to this testimony had a reasonable basis designed to effectuate her client's best interests. *See Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605, 235 A.2d 349, 353 (1967). Although it is unlikely that a reasonable basis exists for counsel's inaction, "we must consider that possibility." *Commonwealth v. Gray*, 339 Pa.Super. 385, 390, 489 A.2d 213, 216 (1985). In such circumstances, rather than finding counsel ineffective now

9. In addition, we note that the prosecutor pursued the reference to appellant's prior conduct by further questioning the victim. Thus, the damaging testimony did not result from an unsolicited response to the Commonwealth's questioning.

and remanding for a new trial, the "better course" is to remand the case for an evidentiary hearing at which counsel will have an opportunity to explain the reasons for the course chosen. *See Commonwealth v. Spotts,* 341 Pa.Super. 31, 36, 491 A.2d 132, 135 (1985). *See also Commonwealth v. Turner,* 469 Pa. 319, 324, 365 A.2d 847, 849 (1976); *Commonwealth v. Gray, supra.*

For the foregoing reasons, we vacate the judgment of sentence and remand the case to the trial court for a hearing to determine whether trial counsel had a reasonable basis for failing to object to the introduction of testimony regarding appellant's prior criminal activity. If the trial court finds that no reasonable basis exists for counsel's actions, a new trial must be granted. Otherwise, the judgment of sentence shall be reinstated.

Judgment of sentence vacated and case remanded for evidentiary hearing on counsel's effectiveness. Jurisdiction is relinquished.