LABRUM, J.,
Defendant Stephen W. Maloney was tried before the court and jury on charges of rape, involuntary deviate sexual *266 intercourse, indecent assault, simple assault, aggravated assault, false imprisonment, unlawful restraint and corrupting the morals of children. Defendant’s demurrer was sustained to the charges of aggravated assault, false imprisonment and unlawful restraint. The jury found defendant guilty of involuntary deviate sexual intercourse and indecent assault, and not guilty of rape and corrupting the morals of children. Timely post-trial motions were filed by defendant and on May 31, 1990, the court granted defendant a new trial. The Commonwealth has appealed to the Superior Court.
The charges in the present case were filed against defendant on March 23, 1989. On March 19, 1989, this defendant was charged in a totally unrelated incident, with the crimes of simple assault and indecent assault on an alleged victim in Sheehan Hall on the campus of Villanova University. The preliminary hearings on both sets of charges were held on the same date, at which time the Commonwealth successfully moved to add the charges of unlawful restraint and false imprisonment to the second set of charges. When informations were prepared, the Commonwealth gave notice that it intended to join the latter charges with the present charges. The defense filed motion to sever and the court granted the said motion and ordered separate trials.
Prior to the trial of this matter, the defense filed a motion in limine to exclude any evidence of the existence of the other charges into this case. The defense anticipated that the alleged victim in this case might reveal the existence of the other charges against defendant when she was questioned by the district attorney upon direct examination.
The charges against defendant in the present case arose out of his conduct with the alleged victim on *267 October 29, 1988. The incident was not reported until March 23, 1989, some five months later.
In a case involving charges as found herein, the issue arose as to the reason for the delay in reporting alleged incident number one.
The Commonwealth explained that alleged Victim Number One, involved in the incident of October 29, 1988, heard about a second incident for which defendant was arrested on March 19, 1989. Alleged Victim Number One and alleged Victim Number Two were both members of the university’s varsity swim team. In light of a second incident, Victim Number One decided to press charges on March 23, 1989. Thus, chronologically, the incident involved in this trial occurred first, yet was reported second. The Commonwealth argued its need to explain the reason for delay between the occurrence and reporting of incident number one, the case presently before this court.
In an in camera proceeding, the court instructed the district attorney that the court would permit no reference to the other charges from incident number two in the testimony of this case. The district attorney offered to have the alleged victim respond only that she has heard of another incident in March 1989 which compelled her to report what had allegedly happened to her in October 1988. Again, the court indicated that it would not permit any reference to other charges against defendant in this case.
In her actual direct testimony and in response to the questions from the district attorney, the alleged victim testified that she reported defendant’s attack upon her because she had read in the campus newspaper in March 1989 that another member of the varsity swim team had been attacked in her dormitory room. She further stated that she felt guilty for not having reported the attack upon her by *268 defendant for, had she done so, she might have prevented the subsequent attack. This clearly went beyond the ruling in the in camera procedure.
The jury began deliberations on March 21, 1990 and returned its verdict on March 22, 1990. On the morning of March 22, 1990, defense counsel brought to the attention of the district attorney and the court a newspaper article in the Delaware County Daily Times, a newspaper of general circulation in the community, which stated inter alia the following:
“Maloney is also scheduled to stand trial next week on charges he indecently assaulted a 19-year-old student in her dormitory room on March 20, 1989.” Delaware County Daily Times, March 22, 1990, at 26.
Referring, of course, to incident number two.
Defense counsel requested the court to conduct voir dire examination of the jurors in order to determine whether or not any of them was exposed to or acquired knowledge of the published article. The court and counsel learned that at least one juror arrived at the jury deliberation room in possession of a copy of the newspaper in question. The juror was relieved of the copy of the paper before she entered the jury deliberation room and the newspaper was delivered to the trial judge.
Juror Number One indicated that he has seen the headline of the story but had not read the article. Juror Number Three, who had been in possession of the newspaper, denied reading the article. Juror Number Two saw Juror Number Three with a newspaper and saw it taken from her when she reached the deliberation room. Juror Number Eight admitted hearing about the article from Juror Number One. Juror Number Nine told the court that he had heard of two newspaper articles. One had apparently appeared on March 21 and the other was *269 the article in question. This juror indicated that he had been told by someone on the jury that the Times article reported the defendant’s version on the incident. The remaining seven jurors indicated no knowledge of the newspaper article.
The defense moved for a mistrial and the motion was denied; however, the court expressed concern over the situation and chose not to further elaborate to the jury and chose to permit the trial to continue with appropriate closing instructions at the end of the trial.
After consideration of post-trial motions and argument by respective counsel, the court granted a new trial on the basis that defendant was prejudiced by the violation of the court’s directive restricting the Commonwealth’s proof to avoid suggestion of other criminal conduct by defendant and by the conduct of the jurors in disobeying the court’s instructions to avoid viewing and discussing newspaper publicity of the case, against which they had been repeatedly warned throughout the trial.
The law of this Commonwealth provides that evidence that shows or tends to show that the accused is guilty of committing other crimes and offenses other than those for which he is on trial is inadmissible. Commonwealth v. Perdue, 387 Pa. Super. 473, 564 A.2d 489 (1989). If a jury can reasonably infer from the evidence presented that defendant engaged in other criminal activity the prejudicial error has been committed. Commonwealth v. Knapp, 374 Pa. Super. 160, 542 A.2d 546 (1988). Whether the testimony was intentionally elicited by the Commonwealth is a factor to be considered in granting a mistrial or a new trial. Commonwealth v. Thomas, 361 Pa. Super. 1, 521 A.2d 442 (1987). It is clear to this court that the instructions to the district attorney were explicit as *270 to the restriction imposed on the testimony to be permitted by the alleged victim in the case. The prosecutor chose to have his witness testify as to knowledge of a subsequent incident even though the court instructed that no reference was to be made to any other charges involved beyond the parameters of the in camera instructions. By treading into such a restricted area, the Commonwealth must suffer the consequences.
Turning to the newspaper article, the court determined that the published article contained prejudicial information regarding defendant and that at least a portion of the jury had breached its duty by exposing itself to the information. When such an incident occurs during a trial and it becomes probable in the mind of the court that the jury, despite the instruction of the court, has been tainted by the improper information which it has received, the only appropriate relief is to grant defendant a new trial. Commonwealth v. Breakiron, 524 Pa. 282, 571 A.2d 1035 (1990). In reviewing the totality of circumstances of this case and the verdict of the jury the danger of prejudice was so great to the defendant that a new trial was mandated.